Dye, J.
On this appeal from an order unanimously confirming a partial final determination by which respondent imposed upon United States Steel Corporation an assessment for a business tax deficiency for the years 1948, 1949 and 1950, in the principal amount of $176,767.28 plus penalties and interest totaling $144,388.62, the narrow question for decision is whether the prevailing ‘ ‘ financial business ” rate was the proper rate to use.
United States Steel is a New Jersey Corporation licensed to do business in New York and having its principal office at 71 Broadway, Ngav York City. During the tax years involved, it concededly functioned as a holding company, doing no other business than that of holding the stock of subsidiary operating *458 ciompanies whos'e operative efforts it co-ordinated and supervised and at times financed in whole or in part. In turn, all dividends and interest on securities of the subsidiary companies were'paid to Steel at its New York office, and all such moneys, including securities, were deposited and held in New York banks. From time to time, as required by statute or by-laws, United States Steel made consolidated reports to stockholders and public agencies, and filed tax returns. Under protest, it filed a timely business and financial tax return for each of the controverted years, reporting its tax on approximately 2% of ‘ ‘ gross income ’ ’.
The deficiency assessment was made on an allocation to New York City of 12%% of the gross income received, and at the “financial business” rate of two fifths of 1%. The parties stipulated below that, had respondent elected to treat United States Steel as a “general business ”, and to apply the then prevailing “ general business ” rate of one fifth of 1% to “ gross receipts ”, without allocation, the principal tax would have amounted to $808,379.91. But, apart from its contention that it is entitled to be treated as a “ general business,’’ United States Steel has never conceded that the tax could have been imposed upon the basis of the entire gross receipts, without regard to apportionment.
Section 24-a of th% New York State General City Law (art. 2-B, General Business an! Financial Tax Authorization) authorizes the local legislators oi any city with a population of over one million or more to adopt or amend local laws “imposing in any such city a tax upon persons carrying on or exercising for gain or profit within such city, any trade, business, profession, vocation or commercial activity * * * or making sales within such city” at a rate “not to exceed one-fifth of o.ne per centum * * * and upon persons carrying on * * * any ‘ financial business ’ ” at a rate “ not to exceed two-fifths of one per centum ”.
A ‘ ‘ financial business ’ ’ is defined as including certain named categories of activities, to wit: “ 2. ‘ Financial Business. The services and transactions of private banks, private bankers, dealers and brokers in money, credits, commercial paper, bonds, notes, securities -and stocks, monetary metals, factors, and commission merchants ” (General City Law, § 24-a .[§§ 1, 2] ).
*459 Local Law No. 44 of 1948 of New York City, enacted pursuant to the State enabling statute, contains identical language except for the addition of the words 1 ‘ holding companies ” (Administrative Code, § B46-1.0 [ch. 46, tit. B]). It is this difference in language that respondent points to as authority for classifying the taxpayer as a “ financial business ’ ’ and that the taxpayer points to in support of its challenge to the classification.
It is clear that holding companies are not included in the definition of “financial business ” contained in section 24-a, and that this omission indicates a legislative intent to preclude the City of New York from taxing the gross income of a holding company at the “ financial business ” rate.
In New York, the State Legislature has the exclusive power to tax, including the power to determine the class of persons to he taxed (N. Y. Const., art. Ill, § 1; Genet v. City of Brooklyn, 99 N. Y. 296; Gautier v. Ditmar, 204 N. Y. 20), which it may delegate to its municipal subdivisions, including the City of New York. But any taxes imposed by the latter must be within the expressed limitations (County Securities v. Seacord, 278 N. Y. 34) and, unless authorized, a tax so levied is constitutionally invalid (Matter of Long Is. R. R. Co. v. Hylan, 240 N. Y. 199). It is equally well settled that the Legislature may classify property for tax purposes in any manner it deems proper (People ex rel. Hudson Riv. Day Line v. Franck, 257 N. Y. 69). Its power in that regard is not without limitation, for the classification must have some reasonable basis (People ex rel. Farrington v. Mensching, 187 N. Y. 8). In this instance the State Legislature expressly stated that the classification ‘ ‘ shall mean or include” a list of named special classes of business (General City Law, art. 2-B, § 24-a [§§ 1, 2]), thereby evidencing an intention to restrict the application of the tax to the categories listed (Jackson v. Citizens Cas. Co. of N. Y., 277 N. Y. 385) and to exclude any business activity not so included. So viewed, the classification “ financial business ” in the State Enabling Act indicates an intention to preclude the city from classifying this taxpayer as a “ financial business ”.
If there is any doubt that the Legislature so intended to exclude holding companies as “ financial business ”, and we think there is none, the history of the Enabling Act points to the *460 same result. The original enabling statute was enacted in 1934, and annually re-enacted. In 1941 it included a model local law, patterned on the then existing New York City law imposing the General Business and Financial Tax. In 1942 the New York City law included for the first time the term ‘ ‘ holding companies ” in its definition, but the Comptroller has since 1934 issued regulations treating holding companies as financial businesses. From this background information, the Comptroller reasons that the re-enactments of the enabling statute from 1934 through 1941 constituted a confirmation of the administrative construction. While it is true that repeated re-enactment points to legislative favoring of reasonable administrative interpretation (McFeely v. Commissioner, 296 U. S. 102 [1935]; Helvering v. Reynolds Co., 306 U. S. 110 [1939]; Wilmette Park Dist. v. Campbell, 338 U. S. 411 [1949]; Matter of Stupack, 274 N. Y. 198 [1937]), we ought not to attribute such an attitude to the Legislature’s silence in this area. First, the administrative construction was unreasonable under the circumstances. Second, from 1942 forward, the Legislature failed to add “holding companies ” to its definition, despite the city’s attempts to induce such an amendment (Assembly Int. No. 3519 and Senate Int. No. 3124, New York Legislative Record and Index, 180th Session, beginning January 9, 1957; Assembly Int. No. 3725 and Senate Int. No. 3186, New York Legislative Record and Index, 181st Session, beginning January 8, 1958). Third, the Legislature did include ‘1 holding companies ’ ’ in the definition of financial business contained in the enabling statute authorizing cities with a population of fewer than one million to impose a general business and financial tax similar to the New York City tax (L. 1948, ch. 651, amdg. L. 1947, ch. 278).
In the light of this historic background, the State Legislature clearly never intended to give the city authority to include holding companies in the definition of “financial business”. Thus the Comptroller assessed the deficiency tax without authority.
Respondent contends that, even if his classification was improper, his determination should nonetheless stand because the amount of tax imposed is less than what would have been imposed had United States Steel been classified as a general business. This premise, viz., that the general business tax would *461 have been greater, is disputed by Steel. In any event we may not here decide the amount of the general business tax, if any, which respondent might have imposed.
The order appealed from should be reversed and the determination of the Comptroller annulled, with costs in this court and in the Appellate Division, and the matter remitted to the Comptroller for further proceedings not inconsistent with this opinion.