Fred Thiele, Esq. Town Attorney, Southampton
I am writing in response to your request for an opinion as to whether the Town of Southampton can create an affordable housing fee and an affordable housing trust fund.
As stated in your letter, the town desires to facilitate the construction of low and moderate income housing within the town. The town is considering establishment of an affordable housing fee to be paid by subdivision developers with proceeds to be deposited in an affordable housing trust fund. The fund would be utilized for acquisition and improvement of property in designated urban renewal areas. In lieu of the fee, where permitted by the town board and town planning board, a developer could build low and moderate income housing. The specifics of the program have not yet been determined. You have asked whether, by local law, a town can create an affordable housing fee and an affordable housing trust fund.
Local governments have a valid interest to provide affordable housing to the members of the community. The urban renewal provisions of the General Municipal Law (§§ 500-525) show that programs of this type serve a valid public purpose. Section 554 of the General Municipal Law sets forth the powers of an urban renewal agency. If such an agency was to be created to administer the town's affordable housing program, it would have the power:
 "to prepare or cause to be prepared a general neighborhood renewal plan for an area consisting of an urban renewal area or areas, together with any adjoining areas having specially related problems, and which is of such size that urban renewal activities may have to be initiated in stages * * * [and] to prepare or cause to be prepared a community-wide plan or program for urban renewal which shall conform to the comprehensive community plan for development of the municipality as a whole" (General Municipal Law, § 554[16], [17]).
Furthermore, the agency's revenue-raising powers include the power to acquire property, invest money, apply for loans and grants and borrow money (id., § 554; see also, id., §§ 508, 509, 510, dealing with state loans, periodic subsidies and state capital grants).
The plan is to require that subdivision developers pay the affordable housing fee. Section 277 of the Town Law grants the proposed planning board extensive powers to regulate subdivisions. The purpose of these regulations is to ensure the orderly development of the town. More specifically, the process of subdivision approval enables the town planning board to ensure that the proposed streets are sufficiently wide and of adequate grade; that proposed parks are of adequate size, that the land is suitable for the proposed construction; and that street signs, sidewalks, street lighting, water mains and sanitary sewers are all in accordance with town standards (ibid.).
A local government, as part of its regulatory authority, may impose fees for the payment of the expenses of a regulatory program (City of Buffalov Stevenson, 207 N.Y. 258 [1913]; Town Law, § 272). (See our informal opinion No. 82-48, which concludes that a village may establish a procedure whereby a developer is charged for the planning board's costs in reviewing an application for approval of a subdivision plan.) The amount of the fees charged by the planning board should reflect what is reasonably necessary to undertake the regulatory review (Jewish Recon.,Etc. v Inc. Village of Roslyn Harbor, 40 N.Y.2d 158, 163 [1976]; Op Atty Gen [Inf] 82-48; Op Atty Gen [Inf] 83-18). Thus, it is within the town's authority to charge subdivision developers to recoup the costs of regulation.
If the collected funds are being used for purposes other than recoupment of regulatory expenses, the charge imposed may actually be a tax, which would be outside the town's authority. The distinction between fees and taxes is well established in New York and is based on the purpose for which the particular charge is made (City of Buffalo v Stevenson,207 N.Y. 258 [1913]). In Stevenson, the City of Buffalo imposed a charge of $10 for unauthorized construction which required digging through the pavement of city streets. Collected funds were set aside and put into a general fund to be used for maintenance and repairs of streets throughout the city. The Court found that the charge was a fee, and not a tax, because the purpose of the charge was to regulate the streets, a purpose which was within the city's police power (207 N Y at 263). Although the effect of the fee was to raise money for the city, the Court found this to be an incidental result of the regulation, and not its purpose (id.;
see also, Matter of Hanson v Griffiths, 204 Misc. 736, affd283 App. Div. 662 [1953] [charge is sustainable as a fee where it is imposed on a person to defray or help to defray the cost of a particular service rendered for his account]).
In the immediate case, the purpose of the proposed charge is to raise funds to further the town's affordable housing fund. Although the town has the power to regulate subdivisions of real property, the proposed charges do not appear to be incidental to the exercise of that power, as they were in Stevenson. In our opinion, the charges cannot be considered an incidental result of the regulations. Rather, they are in the nature of a tax imposed by the town to raise money for purposes unrelated to real property subdivision.
It is well settled that the taxing power is vested in the Legislature under section 1 of Article XVI of the State Constitution. The Legislature may delegate the power to tax to local governments (NY Const, Art XVI, § 1; Sonmax, Inc. v City of New York, 43 N.Y.2d 253, 257 [1977];Matter of U.S. Steel v Gerosa, 7 N.Y.2d 454 [1960]). In order for the town to tax subdivision developers, it would be necessary that the Legislature specifically empowered the town to do so.
Accordingly, we conclude that a town does not have the authority to impose a tax on subdivision developers to raise money to create an affordable housing trust fund.